UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAY M. ANDERSON, ) | CASE NO. C07-0105-TSZ-MAT |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY |
| MICHAEL J. ASTRUE, Commissioner ) | DISABILITY APPEAL |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Jay Anderson proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be AFFIRMED IN PART and REMANDED IN PART for further administrative proceedings.

/ / /

/ / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1960.[1]  He has a GED.  Plaintiff previously worked as a casual seaman, a carpet installer, a stadium cleaner, a casual laborer, a truss builder, a fast food worker, and an animal caretaker.

Plaintiff filed his DI and SSI applications on January 27, 2003, alleging disability since September 1, 2001.  (AR 18.)  His applications were denied at the initial level and on reconsideration, and he timely requested a hearing. On April 21, 2005, ALJ Mary Gallagher Dilley held a hearing, taking testimony from plaintiff.  (AR 18.)  The ALJ issued a decision finding plaintiff not disabled on March 31, 2006.  (AR 15-31.)

Plaintiff timely appealed.  The Appeals Council denied his request for review on December 9, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 6-9.)  Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date.    At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

alcohol abuse, affective disorder, and anxiety disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff's RFC and, including the limiting effects of drug abuse and alcoholism (DAA), found him unable to perform any past relevant work. The ALJ also assessed plaintiff's RFC absent the limiting effects of DAA and found him able to perform his past relevant work as an animal caretaker or as a stadium cleaner. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Although finding plaintiff not disabled at step four, the ALJ also conducted a step five analysis. Using the Medical-Vocational Guidelines as a framework at step five, the ALJ found plaintiff, including the limiting effects of DAA, unable to perform any past work or any other work existing in significant numbers in the national economy. Upon repeating the step five analysis absent the limiting effects of DAA, the ALJ found plaintiff capable of performing jobs existing in significant numbers in the national economy, including work as a night cleaner or as a night guard.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred by: (1) ignoring or overlooking conflicts between the vocational expert (VE)'s testimony at step four and step five and the Dictionary of Occupational Titles (DOT) for the jobs identified; (2) finding plaintiff's DAA to be material; (3) discounting the opinions of record from plaintiff's mental health providers and evaluators; (4) assessing plaintiff's credibility incorrectly; and (5) assessing plaintiff's RFC incorrectly. He seeks remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons described below, the Court finds the matter should be affirmed in part and remanded in part for further administrative proceedings.

<u>Vocational Testimony and Conflict with the DOT</u>

Plaintiff argues that the ALJ erred by ignoring or overlooking conflicts between the VE's testimony at step four and step five and the DOT for the jobs identified. First, plaintiff argues that, when considering the issue of a job's simplicity, the General Educational Development (GED) reasoning levels in the DOT should be preferred over the DOT's Specific Vocational Preparation (SVP) levels. The DOT categorizes the GED levels in three divisions: Reasoning Development, Mathematical Development, and Language Development, each of which are further split into six levels. *See* DOT, App. C at III. While GED reasoning levels deal with the ability to follow instructions and to solve problems, the SVP levels are "defined as the amount of time required by

a typical worker" to become trained to perform adequately in a specific position. *Id.* at II and III. Plaintiff observes that the definition of "unskilled work" in 20 C.F.R. §§ 404.1568(a) and 416.968(a) – "work which needs little to no judgment to do simple duties that can be learned on the job in a short period of time[]" – coincides with the definitions of SVP levels one and two at DOT, Appendix C at II – requiring, respectively, a short demonstration and anything beyond a short demonstration up to and including a month to learn a job. *See* Social Security Ruling (SSR) 00-4p. He contrasts the definition of "unskilled work" with the definitions in the GED reasoning levels, emphasizing that GED reasoning level one employs the word "simple" in its definition and that GED reasoning level two uses the word "detailed" in its definition. *See* DOT, App. C at III.[2] Plaintiff points out that three of the four jobs identified in the VE's testimony – animal caretaker, stadium cleaner, and night guard – require GED reasoning level two, while the only job identified requiring GED reasoning level one is that of night cleaner.[3] He argues that the ALJ's usage of the word "simple" in describing plaintiff's RFC limits plaintiff to jobs requiring GED reasoning level one, and, therefore, that he cannot perform the three jobs requiring GED reasoning level two (animal caretaker, stadium cleaner, and night guard).

Plaintiff next notes certain vocational component ratings of the jobs that appear in the

---

[2] For the GED reasoning levels, the DOT gives the following definition of level one: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C at III. Meanwhile, the DOT defines GED reasoning level two as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

[3] *See* Attach. A (DOT 410.674-010 (animal caretaker), DOT 381.687-018 (cleaner, industrial), DOT 372.667.034 (guard, security), and DOT 323.687-014 (cleaner, housekeeping).)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

Westlaw versions of the DOT, and argues that those component ratings are inconsistent with the ALJ's finding regarding his RFC. He maintains that this argument disqualifies the positions of animal caretaker, night cleaner, and night guard, with only stadium cleaner remaining as a viable position.[4]

The Commissioner does not respond to these arguments. Instead, he argues generally that the VE's testimony constituted substantial evidence.

The ALJ, in considering plaintiff's mental impairments, found him "able to perform simple, routine, repetitive work that does not require constant attention to detail," and "able to have occasional contact with the public and coworkers." (AR 26.) She thereafter summarized the VE's testimony at step four and step five as follows:

> As noted above, considering the claimant's residual functional capacity including the limiting effects of alcohol and drug use, he is unable to perform his past work or other work existing in significant numbers in the regional or national economy.
>
> However, considering his residual functional capacity absent the limiting effects of alcohol and drug use, at the hearing, the impartial vocational expert was asked whether, in the expert's opinion, a hypothetical individual of the same age, education, and work experience as the claimant, and with the same abilities and limitations outlined in above residual functioning [sic] capacity, could perform the claimant's past work. The vocational expert identified the claimant's past work as a casual seaman (DOT #911.687-030), which is medium, semi-skilled work; carpet installer (DOT #864.381-010), which is heavy semi-skilled work; cleaner (DOT #381.687-018), which is medium unskilled work; casual laborer (DOT #862.684-014), which is heavy semi-skilled work as performed by the claimant; truss builder (DOT #860.664-010), which is medium, semi-skilled work; and an animal caretaker (DOT #410.674-010), which is medium unskilled work as performed by the claimant. *See*, 20 C.F.R. §§ 404.1565, 416.965. The vocational expert further testified that such a hypothetical individual could perform the claimant's past relevant work as an animal caretaker or a cleaner of stadium stands. Additionally, under step five of the sequential analysis, the vocational expert

---

[4] *See* Attach. B (Ex. A (animal caretaker), Ex. B (cleaner, industrial), Ex. C (cleaner, housekeeping), and Ex. D (guard, security).)

testified that assuming the hypothetical individual's specific work restrictions, he is capable of making a vocational adjustment to other work, including work as a night cleaner (DOT #323.687-014), which is light unskilled work, with 4,000 jobs in Washington, and 200,000 jobs in the nation; and a night guard (DOT #) [sic], which is light semi-skilled work, with 2,000 jobs in Washington, and 100,000 jobs in the nation. The vocational expert's testimony is accorded significant weight, as it is consistent with the record as a whole and the Dictionary of Occupational Titles. Therefore, it is concluded the claimant could perform his past relevant work as an animal caretaker and /or a clearner [sic] of stadium stands.

(AR 28-29.)

As noted above, plaintiff insists that the GED levels are a more appropriate gauge of the simplicity of a job than the SVP levels, and that there is a conflict between the ALJ's "does not require constant attention to detail" and GED reasoning level two's "detailed but uninvolved." A similar argument was addressed in *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005), wherein the court held that the plaintiff's RFC, limiting her to simple tasks, did not conflict with GED reasoning level two. The *Meissl* court explained that, whereas the SSA mental RFC assessment only distinguishes between the terms "simple" and "detailed," there are several GED reasoning levels, and concluded that confining the SSA mental RFC assessment's "simple" to only GED reasoning level one, and thereby forcing the SSA mental RFC assessment's "detailed" to encompass all the other GED reasoning levels, would defeat the purpose of having multiple GED reasoning levels. *Id.* The Court finds this reasoning and conclusion persuasive. Plaintiff's RFC assessment is not in conflict with GED reasoning level two, and, therefore, plaintiff's first argument does not warrant disqualification of the animal caretaker and stadium cleaner positions at step four, or of the night guard position at step five.

Nor does plaintiff's second argument pass muster. The component ratings upon which plaintiff relies are not found within the official DOT, *see* Attach. A, or the Selected Characteristics

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

of Occupations (SCO) Defined in the Revised DOT (1993), a companion publication to the DOT granted the same level of authority as the DOT under SSR 00-4p.[5] Instead, these ratings are included in the definitions found in Westlaw's DICOT database, which is Westlaw's version of the DOT. *See* Attach. B.[6] According to Westlaw's description of the contents of its DICOT database:

> Data records which were not previously published in the printed version of the Dictionary of Occupational Titles, 4th Edition - Revised 1991 are copyrighted by the North Carolina Occupational Analysis Field Center. Copyrighted component ratings specifically include: . . . Work Fields; Materials, Products, Subject Matter, and Services; Significant Worker Functions; Temperaments; Aptitudes; Environmental Conditions and Physical Demands, except Strength.

*Id*. Plaintiff's argument hinges on the Significant Worker Functions and Temperaments component ratings. Yet, plaintiff has misplaced reliance on unofficial versions of the DOT. There is no conflict between the VE's testimony or plaintiff's RFC assessment and the official version of the DOT or the SCO. *See* Attach. A. As such, there is no basis to disqualify the VE's testimony as to the animal caretaker position at step four, or the night cleaner and night guard positions at step five.

However, on a separate but related issue the Court finds remand warranted. The ALJ

---

[5] The occupational definitions contained in the official version of the DOT are composed of seven basic parts: (1) the occupational code number; (2) the occupational title; (3) the industry designation; (4) alternate titles (if any); (5) the body of the definition; (6) undefined related titles (if any); and (7) definition trailer. *See* Attach. A. The definition trailer contains five components: (1) date of last update; (2) SVP levels; (3) GED levels; (4) strength ratings; and (5) guide for occupational exploration codes. *Id*. The SCO supplements the information provided by the DOT with component ratings for the Physical Demands and Environmental Conditions of every job in the DOT.

[6] The entries in Westlaw's DICOT database are somewhat misleading in that the formatting of the component ratings makes them appear to be subsections of and included within the official SVP levels. *See* Attach. B.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

failed to make the mandatory inquiry as to whether the VE's testimony conflicted with the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). In *Massachi*, the Ninth Circuit confirmed that the procedural requirements of SSR 00-4p unambiguously require that, in utilizing a VE, the ALJ has "an affirmative responsibility" to ask, on the record, about any possible conflict between the VE's opinion and any information provided in the DOT. *Id.* The ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the deviation. *Id*. at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). However, the ALJ must first determine whether a conflict with the DOT exists and, if so, whether the VE's explanation is reasonable. *Id.* In this case, the ALJ failed to abide by the procedural requirements of SSR 00-4p, and, therefore, the ALJ should perform the appropriate inquiry upon remand.

## Materiality of Plaintiff's Alcohol and Drug Use

Plaintiff argues that the ALJ erred in finding his DAA to be material. He further argues that the ALJ should not have found his DAA to be material without the assistance of medical expert (ME) testimony.

The Commissioner asserts that the use of a ME to determine the materiality of DAA is discretionary under the regulations. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) ("Administrative law judges *may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart") (emphasis added). The Commissioner argues that the evidence was not ambiguous, and, therefore, the ALJ did not need to consult a ME.

The ALJ's consideration of plaintiff's DAA was extensive, and began at step two:

> In the second step of the sequential evaluation, whether the claimant has any severe impairments must be determined. A severe impairment is defined as medically determinable impairment or combination of impairments that significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920, Social Security Ruling 96-4p. The claimant alleges that his ability to work is limited by the following impairments: musculoskeletal problems, hepatitis C, depression, social phobia, a back injury, and an elbow injury. Below is a summarized chronology of the medical evidence in the record. All reports and documents have been reviewed although not all are mentioned below.
>
> The claimant has a history of mental difficulties complicated by significant and chronic alcohol and drug use. A psychological evaluation performed by Cassandra Clark, Ph.D., in September 2001, for the Department of Social & Health Services (DSHS), indicated the claimant complained of extreme symptoms, including social phobia, but was not enrolled in mental health treatment. The claimant was observed to be anxious and agitated, reporting he had problems from two compressed vertebrae and that he... "used to be able to hold a job." Although Dr. Clark had no prior contact with the claimant, she opined that the claimant's depression preceded his marijuana (age 13), PCP, methamphetamine, and alcohol use. She noted his drug abuse was in full remission and his alcohol abuse in early remission. Her analysis of the claimant's ability to function was based on his self report of no alcohol use. However, as noted below, the claimant, as of May 2002, admitted his longest period of sobriety was two months, those months were not identified. Thus, the opinion of Dr. Clark is not given substantial weight. . .
>
> . . .
>
> The claimant was admitted to Crisis Triage Unit May 14, 2002 for a week due to suicidal ideation, however, admitted he had stopped his anti-depressant two weeks prior to admission when he went on an alcohol binge; his blood alcohol level was 205 upon admission. At that time, he stated that he had not taken Wellbutrin for two weeks, and was not compliant with his prescription of antabuse; toxicology confirmed benzodiazepines and ethanol in the claimant's system. The claimant admitted during his admission that his longest period of sobriety was two months, and that during that time, he had no hypomanic or manic symptoms and, in fact, had responded very well to Wellbutrin. . .
>
> The claimant returned to treatment at [Seattle Mental Health (SMH)] upon his discharge from Harborview, but began missing individual counseling and group appointments in June 2002, and relapsed on several occasions with alcohol in August and September, including a weekend of binge drinking. The claimant

> returned to treatment for a few sessions, but then began missing appointments again in early October. When his counselor called his home on November 6, 2002 to ask the claimant to return to treatment, the claimant "sounded intoxicated." When the claimant returned to see his counselor on November 12, 2002, he admitted two relapses, one lasting seven days. The claimant did not appear for his November 26, 2002 appointment, and admitted at his December 12, 2002 appointment that he last used alcohol three days prior. . . Reliance on the claimant's testimony is thereby reduced.
>
> The claimant underwent a consultative psychiatric evaluation performed by Dr. Hopfenbeck on February 14, 2003, alleging panic attacks and paranoia. . . However, the claimant alleged he had not used drugs since 1998, and, while admitting some "binge drinking in the early part of 2002," denied use of alcohol for the previous six months. There is clear evidence to the contrary in the SMH treatment records and a hospital admission after a binge in May 2002. At the time of the examination Dr. Hopfenbeck had the report of Dr. Clark and a brief physical evaluation from the Downtown clinic from July 1999 for review. He did not have the reports from Harborview or SMH.
>
> . . . Dr. Hopfenbeck diagnosed the claimant with bipolar II disorder, depressed; panic disorder with agoraphobia; social anxiety disorder; alcohol dependence in early full remission with six months sobriety; amphetamine and cocaine dependence in sustained full remission. . . However, it is difficult to assign much weight to these diagnoses or assessment of functioning, considering Dr. Hopfenbeck's mistaken assumption that the claimant had been clean and sober for six months. Further, Dr. Hopfenbeck's diagnoses of antisocial personality disorder, and panic disorder with agoraphobia were inconsistent with the record . . .
>
> . . .
>
> After review of the complete record, including the testimony presented at the hearing, it is concluded that the claimant has the following medically determinable severe impairments: alcohol abuse, affective disorder, and anxiety disorder.

(AR 20-22, 24, internal citations to record omitted.)   The ALJ went on to consider the materiality of plaintiff's DAA:

> The key factor in determining materiality is whether the claimant would still be found disabled without consideration of the affects of an alcohol and/or drug addiction. In this case, the record clearly demonstrates significant involvement of alcohol and drug abuse which imposes severe limitations. For example, according to records from SMH, the claimant's affective disorder disappears after an

alcoholic binge, indicating that without the exacerbating effects of substance abuse, the claimant's affective disorder is no longer severe. SMH records further indicate that a definitive diagnosis of personality disorder could not be made due to the similar symptoms of substance abuse. Most importantly, the record demonstrates that, absent alcohol and drug use, the claimant is no longer limited with regard to absences or inattention to hazards. . .

In reaching the foregoing conclusion, the claimant was found credible to the extent that he alleged he would experience some limitations, and the residual functional capacity finding above was, accordingly, reduced to accommodate those limitations. However, the claimant's allegations that he was incapable of all work activity are not found to be fully credible because of significant inconsistencies in the record as a whole. Most notably, the claimant told examiner after examiner that he had significant periods of sobriety, despite significant evidence to the contrary, depriving examiners of the full picture needed to determined [sic] his mental health diagnoses. Records indicate that, despite some continued mental health treatment, the claimant continued to relapse, occasionally to the point of alcoholic binges, as recently as September 2004. Further, the claimant's allegations regarding limitations stemming from his mental health diagnoses are not consistent with his reported activities. His inability to perform serial sevens or speak in complete sentences is inconsistent with his ability to create art work and obtain a show. Most significantly, the claimant persistently reported social anxiety and problems with crowds, leading to self-isolative tendencies; however, the claimant was noted to have taken the bus, attended movies when he could afford them, and attended his art show. Further, the claimant claimed he could not walk, but chart notes showed that he was getting out more and walking. For these reasons, the claimant is found not reliable with regard to his reports of subjective limitations of his mental health impairments.

The state agency medical consultants [sic], as well as other treating, examining, and non-examining medical sources, were also considered. Social Security Ruling 96-6p. After review of the record through March 2003, the state agency medical consultant opined that, without consideration of alcohol and drug use, the claimant's low mood and anxiety would impact the claimant's concentration and his ability to perform detailed tasks; however, the claimant would be able to perform simple tasks satisfactorily, as he was demonstrating. . . This opinion appears consistent with the objective medical evidence in the record, as well as the claimant's reported activities. Notwithstanding the fact that records were added following this review and viewing the facts in a light most favorable to the claimant, this opinion is given significant weight.

Little weight is accorded to the opinions of Dr. Hopfenbeck and Dr. Czysz, as they only examined the claimant once and their conclusions were not supported by

objective evidence, and were inconsistent with the claimant's reported activities. For example, Dr. Hopfenbeck opined that the claimant was unable to perform even simple tasks; however, the claimant cared for all of his own needs and took care of his pets. Further, the claimant had exhibited the ability to sustain work at the substantial gainful activity level in the past, and his depressive symptoms appeared at least partially controlled with medications, though they were exacerbated by alcohol abuse. Most importantly, Dr. Hopfenbeck made these opinions assuming incorrectly that the claimant had been sober for six months. While the claimant reported some "binge drinking in the early part of 2002," he denied no [sic] use of alcohol for the previous six months; however, there is clear evidence to the contrary in the SMH treatment records and a hospital admission after a binge in May 2002; thus, raising profound reservations regarding the validity of Dr. Hopfenbeck's assessment of the claimant. Moreover, considering Dr. Hopfenbeck's specialty and his lack of physical examination of the claimant, his opinion regarding the claimant's physical capabilities is unsupported and unpersuasive.

After one cursory examination in January 2005, James D. Czysz, Psy.D., diagnosed the claimant with bipolar disorder and polydrug dependence in remission by the claimant's report, but did not note alcohol abuse in his diagnosis of the claimant. He also noted numerous marked limitations regarding cognitive and social abilities, but provided no explanation for such extreme limitations. Thus, as stated above, this opinion is unsupported and unpersuasive.

A.R.N.P., Ms. Stewart, opined the claimant's mental capacity included numerous marked limitations in a July 2004 statement; however, the record indicated that the claimant met with Ms. Stewart only four times, sporadically between November 2003 and September 2004, and that alcohol abuse was noted as a significant problem during virtually each visit. . . Thus, her assessment of July 2004 is of little probative value. Additionally, there is an assessment from Tina Sghwennicke, B.A., who apparently also worked at the Community House, which indicated multiple marked mental limitations. However, there is neither indication of her relationship to the claimant, nor any treatment records from this individual. Further, she offers no explanation of her assessed limitations. For these reasons, her opinion is also of very little probative value.

(AR 26-28, internal citations to record omitted.) As a result, the ALJ made the following finding:

The claimant's alcohol abuse, affective disorder, and anxiety disorder are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). Further, without consideration of the exacerbating effects of alcohol and drug use, the claimant's affective disorder is no longer severe under the regulations.

(AR 29.)

Plaintiff bears the burden of proving that DAA is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). To do so, plaintiff must establish that his disability continues to be severe even in periods of sobriety. *Id.* If plaintiff cannot establish that his DAA is not material, then the ALJ must repeat the five-step sequential evaluation process for determining whether plaintiff is disabled, absent the limiting effects of DAA. In this case, the ALJ did so and found plaintiff to be not disabled at steps four and five.

Plaintiff's argument also rests on whether the ALJ afforded the appropriate weight to the medical source opinions. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

Here, the ALJ relied primarily on the state agency medical consultant, contradicting the other, discounted evaluations. Dr. Clark performed a psychological examination of plaintiff in September 2001. She opined that the plaintiff's drug abuse was in full remission and his alcohol abuse was in early remission. The ALJ did not give substantial weight to Dr. Clark's opinion

which was based on plaintiff's inaccurate self report of no alcohol use. Dr. Clark's evaluation states that plaintiff was "now clean and sober," but her evaluation also refers to plaintiff's alcohol addiction lasting until 2001, the year of her evaluation. (AR 167-68.) The ALJ noted plaintiff's statement, made in May 2002, that his longest period of sobriety was two months, which contradicted Dr. Clark's conclusion that his alcohol use was in early remission. The ALJ cited Dr. Czysz's failure to note plaintiff's alcohol abuse in his single, cursory examination of plaintiff. The ALJ further cited Dr. Czysz's failure to explain the basis for his assessment of plaintiff's limitations. The ALJ noted that Dr. Hopfenbeck's evaluation of February 2003 reports plaintiff as having been sober for the previous six months, and then points out that plaintiff had a binge in May 2002. However, the record indicates that plaintiff admitted abusing alcohol in November and December 2002, less than six months before Dr. Hopfenbeck's February 2003 evaluation.

The ALJ also considered the opinions of ARNP Stewart and Ms. Sghwennicke, who do not qualify as acceptable medical sources under the Social Security regulations. *See* 20 C.F.R. §§ 404.1513, 416.913. Therefore, their opinions must be given the weight of lay evidence. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ noted that there were only four visits between plaintiff and ARNP Stewart on record, that alcohol abuse was problematic for each of the four visits, and that ARNP Stewart did not address plaintiff's functionality absent the exacerbating effects of DAA. The ALJ discounted the 2004 opinion by Ms. Sghwennicke because the record did not indicate her relationship to or treatment of plaintiff and because she did not explain her assessments.

Accordingly, the ALJ gave reasons germane to both ARNP Stewart and Ms. Sghwennicke to give less weight to their evaluations.

In sum, the ALJ provided legally sufficient reasons for not giving controlling weight to the assessments of plaintiff's providers. The ALJ further exercised discretion, in accordance with the regulations, in choosing not to consult a ME. Therefore, plaintiff fails to demonstrate any error in the ALJ's determination as to the materiality of his DAA.

### Credibility Assessment

Plaintiff argues that the ALJ erred in her credibility assessment. Specifically, he avers that the ALJ *sub silentio* rejected the statement of plaintiff's SSI facilitator, Paul Levering (AR 134), and that Mr. Levering's statement corroborated his testimony regarding his anxiety and depression. Plaintiff contends that this statement amounted to "lay testimony."

The Commissioner asserts that the ALJ gave clear and convincing reasons to find plaintiff not credible. The Commissioner argues that there were a number of inconsistencies in the record and that the ALJ used ordinary methods of credibility assessment to discredit plaintiff. He further argues that Mr. Levering's statement was not *sub silentio* rejected by the ALJ. The Commissioner contends that the ALJ considered and accepted Mr. Levering's statement, as tending to establish plaintiff's ability to understand complex questions and narratives, even in an unnerving situation.

As discussed above, the Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. In this case, the ALJ did not expressly determine to disregard Mr. Levering's report or give germane reasons for doing so. The ALJ did not address the report at

all. However, it does not appear that Mr. Levering's report amounts to lay testimony. Lay testimony, if meant for use in determining a claimant's RFC, offers observations of a claimant's apparent symptomatology. *See* SSR 96-5p. Mr. Levering does not recount any personal observations of plaintiff's symptoms. (AR 134.) Rather, Mr. Levering's report is a memorialization of an interview of plaintiff conducted at the offices of the State of Washington Department of Social and Health Services. Therefore, plaintiff has not demonstrated error in the ALJ's omission of a discussion of Mr. Levering's report.

## RFC Assessment

Plaintiff argues that, if the opinions of record from his mental health providers and evaluators are credited as true and Mr. Levering's testimony is taken into account, the ALJ erred in her RFC assessment. The Commissioner does not respond to these arguments. Instead, he argues generally that the ALJ's RFC assessment was supported by substantial evidence.

As discussed above, the ALJ did not err regarding the opinions of record from plaintiff's mental health providers or Mr. Levering's report. Therefore, the ALJ did not err in her RFC assessment.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED IN PART and REMANDED IN PART for further administrative proceedings. On remand, the ALJ should inquire specifically as to whether the VE's testimony conflicts with the DOT.

DATED this <u>9th</u> day of October, 2007.

_____
Mary Alice Theiler
United States Magistrate Judge